# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF ILLINOIS
# PEORIA DIVISION

| | |
|---|---|
| TAS DISTRIBUTING COMPANY, INC., )<br>  )<br>Plaintiff, )<br>  )<br>   v. )<br>  )<br>CUMMINS, INC. )<br>  )<br>Defendant. ) | Case No. 07-cv-1141 |

## **O R D E R**

Before the Court are the Motion for Partial Summary Judgment as to Liability under Count III filed by TAS on May 7, 2008 [Doc. 74] and the Cross-Motion for Summary Judgment on Count III filed by Cummins on July 21, 2008 [Doc. 82]. For the reasons set forth below, TAS' Motion on Count 3 is DENIED and Cummins' Motion on Count 3 is GRANTED.[1]

### **INTRODUCTION**[2]

TAS and Cummins entered into various contracts in 1997 and 1998 whereby Cummins obtained a license to use technology created by TAS that would automatically turn off and on engines and various electronic accessories, like lights,

---

[1] The Parties sought and were granted leave for these Motions and the Motions with respect to Count 1 to be considered together by the Court. However, as each Motion is unique and requires unique analysis, they are the subject of two related, but separate orders.

[2] In its Orders on the motions for summary judgment with respect to Counts 1 and 2, the Court already has described the contracts at issue and the products that they concern. As such, the Court will not repeat those descriptions in this Order but rather incorporates the necessary background information as identified in those Orders.

in diesel trucks thereby saving battery power. In exchange for use of the technology, Cummins agreed to pay TAS a royalty for every TAS technology based system that was either incorporated in its engines or that was produced as a stand-alone unit that could be attached to an engine. In general, the contracts called for a minimum royalty for the first five years of the contract, which totaled $1 million, and a per unit royalty for every unit sold thereafter.

In a previous lawsuit filed with this Court,[3] TAS alleged that Cummins was not using reasonable efforts to market and sell its technology, in violation of the agreements. In a related vein, Cummins sought a declaration that it owed only minimum royalties for the first five years and owed no royalties thereafter. This Court found, in part, that TAS did not present evidence of any damages that resulted from Cummins' alleged failure to use reasonable efforts to sell and market its product. However, this Court did find that Cummins owed royalty payments beyond March 31, 2003, the last date that it owed minimum royalties, as provided by the contracts.

Count 3, plead as an "alternative" to Count 1, is based on motions and evidence compiled in this very case[4] and is another claim similar to TAS' claim made in TAS 1 that Cummins failed to use reasonable efforts to market and sell TAS technology. TAS specifically alleges that, based on Cummins' Cross Motion for

---

[3] *TAS Distributing Company, Inc. v. Cummins Engine Company, Inc.*, Case No. 03-cv-1036 (hereinafter "TAS I"), aff'd , 491 F.3d 629 (7th Cir. 2007).

[4] The Third Amended Complaint was filed on February 15, 2008 after the motions for summary judgment on Count 1. Normally, the filing of an amended complaint would moot pending dispositive motions. However, the Third Amended Complaint added Count 3 and did not substantively alter the remaining Counts.

Summary Judgment as to Count 1 (filed on December 21, 2007), Cummins has asserted that it independently created technology (that TAS labels "enhanced proprietary idle shutdown technology") that would perform the same function as TAS technology (namely shutting down electronic accessories to save battery power). Cummins introduced this technology in late 1998 or 1999 in "ISX" and "ISM" engines, among other engines. This technology is hereinafter labeled ISF Plus System: it is an accessory shutdown feature that Cummins added to the Electronic Control Modules (ECM's) of the engines it manufactured. Thus, TAS alleges that Cummins' technology directly competes with TAS' technology and Cummins is using its technology in its engines in lieu of TAS' technology. This, TAS claims, is an indication that Cummins is not using reasonable efforts to market and sell TAS technology. TAS claims that Cummins owes royalties that it would have paid had it incorporated TAS technology instead of its own technology.

It is important to note that TAS is **only** claiming that the ISF Plus System directly competed with its "one box product" as described in this Court's Order on the summary judgment motions related to Count 1.[5]

## BACKGROUND

As indicated above, Count 3 alleges that Cummins did not use reasonable methods to market and sell TAS technology (specifically the one box product), in violation of the License Agreement, by selling and marketing the ISF Plus System. TAS generally contends that by selling or providing the ISF Plus System, Cummins

---

[5] TAS has spent a considerable amount of verbage talking about Cummins' alleged duty under the license agreement to develop a two box product that would compete with the ISF Plus System. This argument has nothing to do with the actual claim in the Third Amended Complaint

is directly competing with TAS' technology (that is installed in an engine's ECM), which also shuts down accessories under certain circumstances.

In order to permit a clear understanding of this litigation and the context for disposition of the pending summary judgment motion, reference must be made to the decision of the Court of Appeals in TAS I affirming this Court's earlier disposition of a summary judgment motion involving this same contract provision. The appellate court described this litigation as follows:

> This case arises out of an agreement between TAS Distribution Company, Inc. ("TAS") and Cummins Engine Company, Inc. ("Cummins"). In that agreement, TAS granted Cummins a co-exclusive license to use its idle-control technology for heavy-duty truck engines. The agreements required Cummins to "make all reasonable efforts to market and sell" the licensed products in an effort to maximize royalties payable to TAS. TAS, believing that Cummins was not making "all reasonable efforts," filed this action in the Central District of Illinois. The complaint set forth twelve counts, including claims for breach of contract and for specific performance. At the close of discovery, Cummins moved for summary judgment, and TAS cross-moved for partial summary judgment (relating specifically to Cummins' failure to market one particular product, the "Temp-A-Stop" Product). The district court granted Cummins' motion for summary judgment and denied in part and granted in part TAS' cross-motion. For the reasons set forth in this opinion, we affirm the judgment of the district court. <u>TAS Distributing Co., Inc. v. Cummins Engine Co.,Inc.</u>, 491 F.3d 625 (7th Cir. 2007).

In TAS I, TAS specifically alleged (in its motion for partial summary judgment) that Cummins was not using "reasonable efforts" to market and sell licensed products by failing to develop a separate Temp-A-Stop system (that is a "two box product" that included only Tem-A-Stop and that is not contained in an engines' ECM). These actions, TAS alleges violated Section 6(f) of the License Agreement. In Cummins' motion for summary judgment, it generally alleged that TAS failed to show that it did not use "reasonable effort" and in any event argued that TAS cannot show

4

damages.[6] Cummins indicated that the contracts did not call for the development of a stand-alone Temp-A-Stop system and that both Temp-A-Start and Temp-A-Stop were included in its ICON product.

In ruling on the Motions, this Court did not specifically address TAS' assertion that Cummins failed to develop an independent Temp-A-Stop system (and thus failed to use reasonable efforts in that particular regard), and instead focused on the general proposition that Cummins failed to use reasonable efforts to market and sell TAS technology. In considering liability, this Court held that it was a question of fact whether or not Cummins was using reasonable efforts to market and sell TAS technology. This Court went on to find that TAS' damages claims were too speculative to warrant judgment in its favor and in fact warranted judgment in Cummins' favor. In so ruling, this Court considered two pieces of evidence: pre-contract negotiations in which Cummins estimated that it could sell a certain amount of units; and an unverified affidavit that a competing company, Detroit Diesel, actually sold a certain number of units.

The Seventh Circuit also considered the sales of Detroit Diesel and Cummins' estimated sales. With respect to the former, the Court stated that Illinois "new business rule"[7] provided guidance and found that damages based on Detroit Diesel's

---

[6] Interestingly enough, one of the arguments forwarded by TAS in response to Cummins' motion for summary judgment was that Cummins was developing "competing technology" – an item named "comfort guard" that was being manufactured by Onan, a subsidiary of Cummins.

[7] This rule states that: "the reasonable certainty requirement for recovery of lost profit damages may be satisfied by comparable 'past profits in an established business, but that the lost profits of a new business would be too speculative' on

5

sales were too speculative. Id. at 635. With respect to the later basis of damages, pre-contractual negotiations, the Court held that the "four corners rule" prevented consideration of extrinsic evidence regarding projected sales. Id. at 636-637. Thus, the Court held that TAS failed to present any evidence upon which damages could be calculated. Id.

In so ruling, the Seventh Circuit noted that Illinois law requires that damages for a breach of contract require proof that plaintiff sustained damages and a reasonable basis for computing those damages. Id. at 632. With respect to lost profits, the Court stated that "lost profits will be allowed only if: their loss is proved with a reasonable degree of certainty; the court is satisfied that the wrongful act of the defendant caused the lost profits; and the profits were reasonably within the contemplation of the defaulting party at the time the contract was entered into." TAS Distributing, 491 F.3d at 632. The Court then noted that "as a general rule, expected profits of a new commercial business are considered too uncertain, specific and remote to permit recovery" – a proposition labeled the "new business rule" which also applies to new products. Id. at 633. The Court then considered all of these principles in finding that TAS' attempt to show damages was too speculative. In particular, with respect to the sales by Detroit Diesel, the Court stated that the new business rule was "relevant" in that it provides that lost profits can be determined by comparable "past profits in an established business, but that the lost profits of a new business would be too speculative on which to base recovery" – a proposition that applies with equal force to new products. Id. (citations omitted).

---

which to base recovery." TAS Distributing Company, Inc. v. Cummins Enging Company, Inc., 491 F.3d 625, 633 (7th Cir. 2007).

The Court found that the product sold by Detroit Diesel was inherently different from Cummins' ICON product and therefore the new business rules and Illinois law regarding damages rendered speculative any comparison between the two. Further, the Court reasoned that there was nothing in the record tending to suggest that Cummins could have sold as many products as Detroit Diesel, or the latter's precise role in the engine market, or facts tending to establish that Detroit Diesel and Cummins are sufficiently comparable companies to warrant imputing Detroit Diesel's engine sales to Cummins. In addition, the Court also found that TAS' proof on the subject did not prove damages to a reasonable degree of certainty. Id. at 635. The Seventh Circuit finally noted that evidence of pre-contract projected sales could not be considered as proof of damages because of the four corners rule applied to integrated contracts. Id. at 637.

TAS' motion for summary judgment on Count III again raises the issue of whether, as a matter of law, Cummins has breached the all reasonable efforts clause. This time, TAS alleges that Cummins' is selling its ISF Plus System instead of a one box system utilizing TAS technolog.

## STANDARD

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. Celotex

Corp. v. Catrett, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which [s]he bears the burden of proof at trial." Warsco v. Preferred Tech. Group, 258 F.3d 557, 563 (7th Cir. 2001); See also Celotex Corp., 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." Chemsource, Inc. v. Hub Group, Inc., 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." Holland v. Jefferson Nat. Life Ins. Co., 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those inferences that are reasonable." Bank Leumi Le-Isreal, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. McClendon v. Indiana Sugars, Inc., 108 F.3d 789, 796 (7th Cir. 1997) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary judgment, the court may not weigh the

evidence or resolve issues of fact; disputed facts must be left for resolution at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986).

## Analysis

In denying TAS' earlier motion for summary judgment, this Court left an opening for another try by TAS to obtain a favorable result when this Court ruled that whether or not Cummins had breached the reasonable efforts clause was a disputed issue of fact to be decided by the trier of fact and not on summary judgment; however, notwithstanding this disputed issue of fact, Cummins was entitled to summary judgment because TAS had not made the requisite showing that it had sustained any damages by Cummins' alleged breach. In the summary judgment motion now before the Court, TAS seemingly seeks to circumvent the ruling on damages by arguing that every sale by Cummins of an accessory shut-down feature correlates to an item of damage – that being a lost sale of a one box product utilizing TAS technology.

As plausible as TAS' latest theory of recovery on Count III seems, summary judgment still depends upon a finding that there is no factual dispute as to whether or not Cummins' actions are in violation of the reasonable efforts clause. Cummins does not deny selling ISF Plus System, although it does challenge the legal significance TAS ascribes to the sales. Consequently, since both sides agree as to the salient facts, the critical issue before the Court is whether, as a matter of law, the sales by Cummins would constitute a breach of the reasonable efforts clause. The Court judges that it does not for one or more of the following reasons argued by Cummins.

### *Res Judicata*

Both parties agree that Illinois' *res judicata* jurisprudence governs the preclusive effect of TAS I. Allan Block Corp. v. County Materials Corp., 512 F.3d 912 (7th Cir. 2008). Illinois law provides that "a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." Piagentini v. Ford Motor Co., 901 N.E.2d 986, 990 (Ill. App. Ct. 2009). The doctrine is equitable and "designed to prevent a multiplicity of lawsuits between the same parties where the facts and issues are the same." Id. As it is an equitable doctrine, it is applied "as fairness and justice require," and "will not be technically applied if to do so would create inequitable and unjust results" or where it would be "fundamentally unfair to do so." Id.

In order for *res judicata* to apply, three elements need be met: "(1) final judgment on the merits has been rendered by a court of competent jurisdiction; (2) identity of cause of action exists; and (3) the parties or their privies are identical in both actions." Jackson v. Victory Memorial Hospital, 900 N.E.2d 309, 317 (Ill. App. Ct. 2008). *Res judicata* not only prevents precluded issues that were raised in the prior lawsuit, but also "those matters that could have been decided in that suit." River Park, Inc. v. City of Highland Park, 703 N.E.2d 883, 889 (Ill. 1998); Treadway v. Nations Credit Financial Services Corp, 892 N.E.2d 534, 539 (Ill. App. Ct. 2008); Altair Corp. v. Grand Premier Trust and Inv., Inc., 742 N.E.2d 351, 355 (Ill. App. Ct. 2000). Whether there is identity of cause of action is determined by a transactional analysis: "separate claims will be considered the same cause of action

for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." River Park, Inc., 703 N.E.2d at 893. "Whether a group of facts constitutes a transaction is 'to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" Altair Corp., 742 N.E.2d at 355 (quoting River Park, Inc., 703 N.E.2d at 893, quoting Restatement (second) of Judgments § 24, at 196 (1982)).

There is no question that there was a final judgment and identity of parties. With respect to identity of cause of action, both TAS I and Count 3 are based on the same provisions of the contracts at issue: In both suits, TAS is alleging that Cummins failed to use reasonable means to market and sell the Temp-A-Start and Temp-A-Stop technology in violation of the Licensing Agreement. However, *res judicata* does not apply.

Cummins argues that Count 3 is a repeat of the contract claim raised by TAS in TAS I where TAS charged that Cummins had breached the reasonable efforts clause and sought damages measured in "exactly the same way" – i.e., the number of Cummins' engines sold with an alleged competitive product, and that there are no new facts or circumstances that are substantial enough to avoid the application of *res judicata*. The Court disagrees. There is a substantial and legally meaningful difference between sales of a comparable product by another engine maker such as DDC and such sales by Cummins. For the reasons cited by the Seventh Circuit in

its TAS I opinion, sales by DDC could not be used to measure TAS' damages flowing from Cummins' breach of the "reasonable efforts" clause.  The difficulties involved in that extrapolation are not present when using Cummins' own sales of competing technology as the measure of damages.  In addition, in TAS 1, TAS' claims revolved around the failure of Cummins to develop a stand-alone Temp-A-Stop product.  In this case, TAS is now alleging that Cummins created the ISF Plus System which directly competes with the one box product based on TAS technology (i.e. ICON).

The essence of Cummins *res judicata* argument is that in its earlier motion for summary judgment decided in TAS I, TAS argued that Cummins' obligation under the "reasonable efforts" clause to sell TAS' Temp-A-Stop technology product arose at the onset of the agreement, and now it argues that the obligation arose at the onset of Cummins selling its own allegedly competing product – ISF Plus System.  Cummins argues that in TAS I, TAS argued that Cummins was obligated to market and sell TAS' Temp-A-Stop product as a stand-alone product, or in other words, that Cummins ISF system, like its ISF Plus System, was a competing product with TAS technology product.  Without fully understanding Cummins' *res judicata* argument, it appears to be based upon Cummins' parsing of the claim in Count 3 as a "claim that the license agreement implied a covenant not to compete or a requirements provision" that could and should have been raised previously.  Cummins' position, as understood by the Court, necessarily assumes that the issue of contract breach was decided in the earlier summary judgment motion that was dealt with in TAS I.  *Au contraire*, the issue of whether or not Cummins breached the "reasonable efforts" clause, regardless of the theory being argued by TAS at the

12

time, was never decided by this Court or the Seventh Circuit. *Res judicata* does not apply, and TAS is free to argue for a breach of the clause by whatever theory it chooses.

In addition, the equities do not warrant application of *res judicata*. In LaHood v. Couri, 603 N.E.2d 1165, (Ill. App. Ct. 1992), the Illinois Court of Appeals noted that:

> In addition, the party against whom the prior judgment is asserted must have had an effective opportunity to litigate the issue in the prior proceedings. . . . For while the purpose of the doctrine is to prevent a party from litigating the same issue twice, it should not be used to preclude a party from litigating the matter at all. . . . The party must have had a full and fair opportunity to litigate the issue, and it must not be an injustice to apply the doctrine. Id. at 1168 (citations and quotation marks omitted).

The LaHood court essentially recognized the equitable nature of the doctrine. In light of Cummins' affirmative misrepresentations[8] in TAS I, this Court must find that, fairness and justice would not permit application of the doctrine in this case. See Restatement (Second) Judgments § 26, Comment J ("The result is the same when the defendant was not fraudulent, but by an innocent misrepresentation prevented the plaintiff from including the entire claim in the original action."). TAS relied on the Cummins' misrepresentation in not asserting that Cummins also failed to use reasonable efforts to market the one box product by developing and selling its own allegedly competing accessories shutdown technology in its engines. Justice requires, then, that TAS be allowed to pursue this claim in light of Cummins' current assertions. At the time that TAS I was filed, TAS did not know

---

[8] These misrepresentations occur in Cummins' briefs and arguably in correspondence with TAS.

13

that Cummins' idle management system may have performed the same function as ICON; as such, it could not have brought such a claim in TAS I.  See Altair Corp., 742 N.E.2d at 355 ("It is well established that the facts as they exist at the time of judgment determine whether *res judicata* bars a subsequent action."); see also City of Chicago v. Midland Smelting Co., 896 N.E.2d 364 (Ill. App. Ct. 2008) (The Illinois Court of Appeals considered successive eminent domain cases.  In the first case the city tried to acquire 25,000 square feet of land pursuant to an ordinance, but the action was dismissed as an "excessive taking."  In the subsequent lawsuit, the city tried to acquire only 12,500 of the same property pursuant to a new ordinance.  The Court found that *res judicata* did not apply because "the two cases are based upon substantively different ordinances and the ordinance giving rise to the present case is an additional fact that did not exist at the time of the initial lawsuit.").  While the "fact" existed that Cummins created an accessory shutdown feature, TAS was not aware of such a feature because of Cummins' misrepresentations.

## The Merits

The only questions that remain, now, are whether Cummins' accessory shutdown feature, included in its engines, is an indication that it failed to use "reasonable efforts" to market and sell TAS technology and whether TAS can prove damages in any event.

The underlying agreement between the parties, as stated in the appellate court's opinion is a license agreement that grants Cummins "a co-exclusive license to use [TAS'] idle control technology for heavy duty truck engines."  See TAS I at 627.  A searching reading of the agreement fails identify any term that could

reasonably be interpreted as prohibiting Cummins from using its own idle control technology in its engines whether pre-existing or later developed. In fact, the agreement explicitly allows for enhancement to TAS' technology or for technology that was jointly developed by TAS and Cummins, neither of which circumstance would require a royalty payment. Furthermore, the record shows that Cummins did market and sell TAS' technology as "ICON" idle management products. The ICON products have generated in excess of one million dollars in royalties to TAS over the past ten years and is still marketed and sold by Cummins currently. It is true that Cummins has not sold the vast number of royalty-producing products as contemplated by both Cummins and TAS, but this fact without more is not sufficient to show that reasonable efforts have not been made to market and sell TAS technology along with its own idle control technology products. It would be a stronger case for TAS if Cummins was marketing and selling technology-similar products by other manufacturers. In that circumstance, such sales would run afoul of the reasonable efforts clause.

It also bears noting that Cummins' ISF Plus System is not a duplicate of ICON since Cummins product, unlike TAS', does not automatically restart after being stopped. This very functionality is what makes ICON superior to other products that merely cut power to an engine and accessories – and what generates an extra cost to the consumer. So basically, Cummins is offering its customers competing, but not identical, systems, with the automatic restart feature of ICON competing with Cummins' ISF Plus System without the automatic restart feature but also without added cost to the purchaser. The license agreement and

15

reasonable efforts clause cannot be interpreted, standing alone, to require Cummins to forego a competitive advantage for those customers who value price over the automatic restart feature. As noted by this Court in TAS I, the question of what is reasonable under a contract is generally a factual inquiry reserved to the finder of fact. Honkomp v. Dixon, 422 N.E.2d 949, 951 (Ill. App. Ct. 1981) ("Questions of reasonableness and good faith are generally issues of fact, entrusted for resolution to the trier of fact."); See also Roboserve, Inc. v. Kato Kagaku Co., Ltd., 78 F.3d. 266, 278 (7th Cir. 1996) (noting that such clauses generally present a question of fact). However, there are no facts upon which a reasonable jury could find that either the contracts prevented Cummins from producing a competing product or that the product produced, the ISF Plus System, was identical such that it might ran afoul of the "reasonable efforts" clause.

Cummins also, however, raises the issue of whether TAS' damages request is too speculative to warrant relief under a breach of contract theory. In order to not reinvent the wheel, this Court follow the Seventh Circuit's statement of what Illinois requires in order to prove damages in a breach of contract case as outlined in TAS I. As such, TAS must show that it sustained damages and that there is a reasonable basis for the computing of such damages. TAS 1 at 632. In the context of lost profits, TAS can only prevail if "their loss is proved with a reasonable degree of certainty; the court is satisfied that the wrongful act of the defendant caused the lost profits; and the profits were reasonably within the contemplation of the defaulting party at the time the contract was entered into." Id. at 632. In order to show lost profits, TAS may base recovery on comparable past profits in an

16

established business (or product); but that it would be too speculative to base recovery on the lost profits on a new business (or product). Id. at 634.

Cummins asserts that the "new business rule" forecloses recovery. As indicated above, "as a general rule, expected profits of a new commercial business are considered too uncertain, specific and remote to permit recovery" – a proposition labeled the "new business rule" which also applies to new products. Id. at 633. As such, Cummins argues that while TAS may base recovery on comparable past profits in an established business (or product), it would be too speculative to base such profits on a new business or product. TAS, however, argues that the new business rule does not apply because it is basing damages on actual sales: that it is owed royalties on actual sales of Cummins engines that contained Cummins' ISF Plus System. Moreover, TAS asserts that the fact that Cummins did not make an actual profit on the ISF Plus System, is irrelevant to a determination of damages: the dollar amount of damages would merely equal the royalties amount that Cummins would have paid had it used Temp-A-Stop, royalties that are not dependent on whether Cummins made a profit on the technology.

In response, Cummins argues that ISF Plus System is not an appropriately comparable product to ICON because its feature cannot restart an engine like the TAS technology. Moreover, it asserts that there is no evidence that any potential customer would be more willing to purchase ICON when it could have the ISF Plus system, without a restart capability, at no extra cost. In a footnote, Cummins further contends that TAS' arguments are an admission that the ISF Plus System is

17

not based on TAS technology and is not, therefore, the subject of the royalties provision of the contract.

The Court finds Cummins reasoning convincing. In order to seek damages, TAS would have to prove more than that Cummins sold engines with the ISF Plus System. TAS would have to show the potential sales Cummins would have made had it only offered products that incorporate TAS technology – only then could it recover the royalties owed. In order to do this, TAS would have to provide some evidence from which it can be reasonably found that Cummins would have sold any given number of units. TAS has failed to do this. Even if TAS were to show such potential sales, this is precisely the type of speculation that the Seventh Circuit found unconvincing in TAS I. It is the type of speculation upon which damages cannot be recovered in a breach of contract claim. For this reason, summary judgment in favor of Defendant must be granted with respect to Count 3.

## CONCLUSION

For the foregoing reasons, the Motion for Partial Summary Judgment as to Liability under Count III filed by TAS on May 7, 2008 [Doc. 74] is DENIED and the Cross-Motion for Summary Judgment on Count III filed by Cummins on July 21, 2008 [Doc. 82] is GRANTED.

Entered this 31st day of March, 2009

                                                      s/ Joe B. McDade
                                                      JOE BILLY MCDADE
                                                   United States District Judge