UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TAS Distributing Co., Inc., | ) | |
|             Plaintiff | ) | |
| | ) | |
| v. | ) | Case No. 07-1141 |
| | ) | |
| Cummins Inc., | ) | |
|             Defendant | ) | |

**ORDER**

Now before the Court is the motion by Plaintiff TAS[1] for entry of a protective order (Doc. #190). For the following reasons, the motion is denied.

The dispute at issue arose out of the deposition of John E. Cepican. During that deposition, Cepican, an attorney, asserted attorney client privilege in response to a number of questions, as well as with respect to certain documents. To understand that privilege, a few background facts are necessary.

Loran Sutton invented a device that later became the Temp-A-Start System ("System"). In 1983, Sutton founded ICT, Inc. to develop that System. Sutton currently receives royalties on various patents relating to the System. At some point in time - it is not known precisely when - Sutton transferred or licensed his interests in the System to ICT, Inc. Harvey Slepian was a shareholder and officer of ICT Inc.

The first pertinent patent granted in the 1980's was for a device that was later developed into the System. This device has undergone a number of revisions since then. ICT was dissolved in 1986;

---

[1] The motion states that it is a "joint" motion. However, it is not the defendant who joins TAS in this motion: it is John Cepican, a non party who was subpoenaed for a deposition.

its assets were acquired in that year by a successor corporation, Integrated Circuit Technology Inc., which itself dissolved in 1988.

In December of 1984, Cepican was retained to perform pre-filing examination of prior art to determine if the System was patentable. Whether he was retained by Sutton or ICT is disputed by the parties to this litigation, but it is clear that Cepican never represented Integrated Circuit Technology Inc . Slepian was a shareholder and officer of the successor corporation as well.

All patents associated with the System are now held by TAS. Slepian is the sole shareholder and CEO of TAS. Cepican has never represented TAS or Slepian. There is no explanation for how TAS came to hold these patents.

There are two issues that must be resolved here. The first is identifying the precise identity of Cepican's client. He claims not to recall whether he was retained by ICT Inc. or by Sutton. That lack of memory is neither here nor there. There is no dispute that he was retained for a specific purpose - pre-filing examination of prior art - and the documents pertinent to the patent filings show that Cepican represented the corporation. His lack of specific recall cannot trump those legal documents.

The second issue is whether any privilege that may have attached to communication between Cepican and ICT Inc. survived the dissolution of ICT Inc. A corporation, as an inanimate entity, must act through agents; the power to waive the corporate attorney-client privilege for solvent corporations rests with the corporation's management. See Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343, 348 (1985)

The attorney-client privilege survives the death of a client when the client is a natural person. Swidler & Berlin v. United States, 524 U.S. 399, 403-06 (1998). Weintraub itself does not decide

the question whether a corporation's attorney client privilege survives the "death" of the corporation. A number of courts have, however, relied on Weintraub's reasoning to decide that question in the negative, ruling that a dissolved corporation does not have the right to assert the attorney-client privilege. See, City of Rialto v. U.S. Dep't of Defense, 492 F.Supp.2d 1193, 1199 (C.D.Cal.2007) (concluding that the special master correctly determined that a dissolved corporation may not assert the attorney-client privilege); Gilliland v. Geramita, No. 2:05-CV-01059, 2006 WL 2642525, at *4, Sept. 14, 2006 (W.D. Pa.)(noting that "there should be a presumption that the attorney-client privilege is no longer viable after a corporate entity ceases to function, unless a party seeking to establish the privilege demonstrates authority and good cause," and concluding that "counsel has no duty to assert the privilege on behalf of a non-functioning corporation"); Lewis v. United States, No. 02-2958B/AN, 2004 WL 3203121, at *4, Dec. 7, 2004 (W.D. Tenn.) (concluding that the "attorney-client privilege cannot be applied to a defunct corporation" where the corporation "is bankrupt and has no asserts, liabilities, directors, shareholders, or employees"). Compare, In re JMP Newcor Int'l, Inc., 204 B.R. 963, 964, (Bankr. N.D.Ill. 1997)(distinguishing between the attorney-client privilege, which belongs to the client and ceases to exist when the corporate client dissolves, and the work-product doctrine, which "belongs to both the attorney and the client" and continues after the conclusion of litigation).

There is no binding authority cited by the parties or located by this Court, and any contrary authority predates Weintraub and is of limited viability. I find that the line of cases cited above is persuasive. Absent some compelling reason to the contrary, the attorney client privilege does not survive the death of the corporation. As the Gilliland Court noted, this interpretation of the privilege is "consistent with the principle that the attorney-client privilege should be given the narrowest

interpretation consistent with its purpose. No real purpose would be served by continuing the privilege after operations cease, as the corporation would no longer have any goodwill or reputation to maintain." 492 F. Supp. 2d at 1200.

TAS makes two related arguments that this case should present an exception to that rule. First, TAS points out that Mr. Slepian has been a corporate official with all the corporations from ICT to TAS. Second, TAS asserts that Loran Sutton, not ICT, was the real party in interest when Sutton communicated with Cepican. Neither of these arguments persuades me that this case should be governed by a different privilege rule.

First and foremost, it is the burden of the party asserting privilege to establish that the communications at issue were privileged when made. Mr. Cepican cannot meet that burden by claiming a lack of memory about who retained him. As noted above, Cepican's work resulted in papers that were filed on behalf of the corporation. Sutton chose the corporate form, and he must live and die by that selection. I find that Cepican's client was the corporation, not Sutton.

Similarly, Slepian's former position as an officer of not one but two defunct corporations does not change the fact that those corporations are non-entities; they are no longer even fictional entities. His prior positions within them or relationships to them adds nothing to the analysis.

For these reasons, I conclude that Mr. Cepican has no client on whose behalf the privilege may rightly be asserted. The motion for protective order [#190] is therefore denied in its entirety.
ENTERED ON October 7, 2009

>s/ John A. Gorman

>JOHN A. GORMAN
>UNITED STATES MAGISTRATE JUDGE