E-FILED
Wednesday, 19 May, 2010  08:04:39 AM
Clerk, U.S. District Court, ILCD

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| TAS DISTRIBUTING COMPANY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 07-cv-1141 |
| ) | |
| CUMMINS, INC., ) | |
| ) | |
| Defendant. ) | |

## O P I N I O N and O R D E R

Before the Court are the Motion for Summary Judgment as to Count I (Doc. 221) filed by Cummins,[1] the Motion for Summary Judgment as to Count III (Doc. 219) filed by Cummins, and the Motion to Strike (Doc. 244) filed by TAS.

For the reasons set forth below, the Motion for Summary Judgment as to Count I is GRANTED, the Motion for Summary Judgment as to Count III is GRANTED, and the Motion to Strike is DENIED.

### MOTION TO STRIKE

TAS seeks an Order striking a reference to the November 9, 2009 deposition testimony of Thomas E. Ambler cited in Cummins' Reply brief in support of its Motion for Summary Judgment as to Count III (Doc.  240). In one of TAS' statements of additional material fact (made in its Response to Cummins' Motion

---

[1] A previous Order, dated May 5, 2010 (Doc. 253) granted in part and took under advisement in part this Motion.  The portion taken under advisement, which will be subject of this Order, dealt with that part of Count I that alleged that Cummins' ISF Plus System contains TAS technology for which Cummins did not pay TAS a royalty.

for Summary Judgment as to Count III (Doc. 238)), TAS asserted that it learned "for the first time" after November 8, 2006 that Cummins' ISF Plus System also shut down accessories.  In reply, Cummins presented the deposition of Mr. Ambler, who is one-third owner (along with Harvey Slepian and Loran Sutton) of Trans-Pro, Inc. which is a licensor to TAS Distributing Company.

Mr. Ambler testified as to a note that he wrote during a conversation with Harvey Slepian, which is dated June 28, 2006 and which states "Suit ready to file on Cummins Schematic (T-A-Stop)."   In his deposition (on direct examination by Cummins), Mr. Ambler testified that the information contained in the note "would have been as a result of a conversation that [he] had with Mr. Slepian June 28, 2006 (Doc. 245-1, p. 8).  On cross-examination (by TAS), however, Mr. Ambler changed his tune.  After a break in testimony and after reviewing another document, Mr. Ambler testified that he believed that the note was in fact written a year later, on June 28, 2007 (Doc. 244-1, p. 5).

TAS argues that reference to Mr. Ambler's deposition testimony in Cummins' reply should be stricken because Cummins failed to include Mr. Ambler's subsequent testimony attesting to the June 28, 2007 date of the note.  TAS does not cite to any Rule of Civil Procedure nor any case authority to support its position.  In fact, a party may present new evidence in a reply brief in order to rebut evidence cited in a response brief.  *See e.g. Hardrick v. City of Bolingbrook*, 522 F.3d 758, 763 (7th Cir. 2008).  TAS should have instead sought to file a surreply (which is not forbidden by the Local Rules) in order to point out the qualification in Mr. Ambler's testimony.  In any event, the Court will consider the entirety of Mr. Ambler's

2

testimony as it relates to the motions for summary judgment.  TAS' motion is accordingly DENIED.

## MOTIONS FOR SUMMARY JUDGMENT

### BACKGROUND[2]

### I.  Procedural History

Count III and part of Count I of the Fifth Amended Complaint are alternative counts related to Cummins' ISF Plus System.  In Count I, TAS alleges (in part) that Cummins' ISF Plus System contains TAS technology (namely Temp-A-Stop) and is therefore an "Original ECM Product" for which Cummins owes TAS a royalty pursuant to their agreements.  The alternative Count III assumes that the ISF Plus System does not contain any TAS Technology.  Count III alleges that Cummins' ISF Plus System directly competes with TAS technology (again, Temp-A-Stop) and therefore violates a clause in the agreement that Cummins use reasonable efforts to market and sell TAS Technology.  In particular, TAS alleges that the ISF Plus System contains an accessory shutdown feature, which is a key feature of Temp-A-Stop, and Cummins includes this feature in its engines, instead of Temp-A-Stop, in order to avoid paying royalties to TAS.

This is the second round of summary judgment briefing on a substantially similar claim made in a previous amended complaint.  In a March 31, 2009 Order (Doc. 145) on those motions for summary judgment (Docs. 74 and 82), this Court

---

[2] The Court again assumes familiarity with the claims in this case, the various Orders, and the documents and Orders filed in two other cases involving these parties, *TAS Distributing Co. v. Cummins Engine Co.*, 1:03-cv-1026 (hereinafter "TAS I") and *Cummins, Inc. v. TAS Distributing Company, Inc.*, 1:09-cv-1096 (hereinafter "TAS III").   This case is, of course, TAS II.

found that *res judicata* did not apply because, in part, the equities did not warrant application of the doctrine. This Court nonetheless went on to find that, because there was no dispute as to a material fact, Cummins did not violate the reasonable efforts clause by selling an arguably competing product and TAS' damages calculation was speculative. That Order, however, was vacated by a subsequent Order dated November 2, 2009 (Doc. 203). As such, the rulings therein are null and void. Because those rulings are not the law of the case, TAS' reliance (and Cummins' reliance) on those rulings in its arguments (i.e. "this Court has already found that Cummins' misstatements in TAS I render the application of the doctrine of *res judicata* inequitable . . . .") is misplaced. The Court will consider each of the arguments made by the parties anew.

With respect to the claims in Count I, Cummins seeks summary judgment on *res judicata* grounds only, not on the merits. With respect to Count III, Cummins seeks summary judgment on the merits as well as on *res judicata* grounds.

## II. Facts related to *Res Judicata*

The Court has combined consideration of Cummins' *res judicata* argument with respect to its ISF Plus System that is contained in both Count I and Count III of TAS' Fifth Amended Complaint. In brief, Cummins asserts that TAS had before it, in TAS I, sufficient evidence and information to assert all claims related to its ISF Plus System. In particular, Cummins asserts that TAS should have garnered evidence that its ISF Plus System had an accessory shutdown feature that performed the same function as TAS' Temp-a-Stop technology. TAS argues,

4

however, that Cummins affirmatively misrepresented the functions and nature of its ISF Plus System, rendering *res judicata* inapplicable.

## A. Evidence

Each of the following items was produced during discovery in TAS I.

The first document is a "Feature Functional Definition" numbered 189 describing an "Idle Shutdown – Integrated Control System" feature (Doc. 221, p. 9, ¶ 24; Doc. 219, p. 12, ¶ 36; Doc. 236-9, p. 2 (hereinafter "FFD 189")).[3]  The document (which appears to be dated December 18, 1995 but which was revised on August 27, 1996) defines the feature, in part, as: "**Vehicle accessory shutdown** – This feature will control a relay (OEM installed/wired) to disable accessories when idle shutdown has taken place.  This is to prevent no-start situations due to drained batteries" (*Id.* (emphasis in original)).  Handwritten next to this descriptor is the phrase "Already have" (*Id.*).    TAS objects to this document by stating that no foundation has been laid for the handwritten portion.[4]  Moreover, TAS argues that

---

[3] Documents are referred to by the document number and page numbers generated by CM/ECF.   Paragraph references correspond to statements of material facts submitted by the parties.

[4] TAS does not elaborate upon its objection nor does Cummins respond.  It is clear, however, that the statement is hearsay.  *Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009).  Cummins does not directly argue that it is not hearsay or that some exception to the hearsay rule applies. However, Cummins does note that the document with the handwritten notation was provided to TAS in TAS I.

The parties also argue as to whether these FFDs describe features that are included in Cummins' engines or features that may be included at some future time.  The documents themselves do not make this clear although Cummins produced them to reflect existing features.  It would be TAS' burden to produce evidence showing otherwise – thereby creating a disputed issue of fact requiring resolution by the trier of fact.  Mere argument on this issue is insufficient; and, TAS has failed

the document only purports to describe a feature that "Cummins was considering adding." Various revisions of FFD 189 also were turned over to TAS in TAS I – the latest being revision number 9.00 and dated June 2, 1997 (Doc. 221, p. 9, ¶ 25; Doc. 219 p. 12, ¶ 37; Doc. 236-10, p. 2).  The revisions do not appear to alter the relevant portion of FFD 189, the description of the accessory shutdown feature.  Another technical document, "OEM Components," also describes the "Idle Shutdown Relay" as used to shut off power to accessories when engaged (Doc. 221, p. 10, ¶ 28; Doc. 219, p. 14, ¶ 40; Doc. 232, p. 3).

The second item is a webpage printout dated August 7, 2002 from the website http://www.powerspec.cummins.com/site/v/book/genhelp/isx_idle.htm (Doc. 221, p. 9, ¶ 26; Doc. 236-11).  This webpage relates to engine idling and various features on the ISX engine related to engine idling.  In particular, the printout indicates that a user can set the idle engine speed, can choose a feature that would allow a user to set idling speed from inside the cabin, and can choose a feature that would allow an engine to shutdown after a preset amount of time.  The webpage also states:

> The shutdown sequence will ONLY turn off the engine.  The electrical system and accessories will stay on until the key is turned off, thus draining the batteries.  **An Optional OEM supplied relay is available which can be used to turn off high current devices such as the headlights.**  The optional relay will remain active until the engine is cranked for starting or the ECM is reset by, for example, cycling the key switch.

 (Doc. 236-10, under heading "Driving Tips" (emphasis added)).  This portion of the webpage is quoted in Count III of the Fifth Amended Complaint wherein TAS

---

to provide any evidence, in the form of an explanatory deposition, for example, or otherwise that would satisfy its burden in this regard.

alleges that "on its past and current websites, Cummins has promoted, and is promoting, the ISF Plus System to the public . . ." (Doc. 205, ¶ 67).   TAS states that this webpage is immaterial but goes on to argue that "TAS reasonably believed in TAS I that this web-site referred to ICON-equipped engines . . . ."[5]

Various depositions also were taken in TAS I.   On March 3, 2004, Cliff Putterill, then an OEM account manager for Cummins, testified that Cummins did not attempt to develop a Temp-a-Stop system because Cummins had an "idle shut down system" (Doc. 236-16, p. 5).   Putterill further testified that he believed that Temp-a-Stop and Cummins' idle shutdown system did "pretty much the same thing. They will automatically shut an engine down to minimize the length of time the engine spends at idle" (*Id.*).   In particular, the following exchange occurred:

> Q.  To the best of your knowledge does idle shutdown do anything that the Temp-A-stop system doesn't do?
>
> A.  Yes.
>
> Q.  And what's that?
>
> A.  We have various overrides that are available.  I don't know enough about Temp-a-stop system to be able to say whether they have that or not.
>
> Q.  I'm just asking specifically the things you know of for sure.
>
> A.  Oh.
>
> Q.  Are there any features that the idle shut down that Cummins has – does have that the Temp-a-stop system doesn't?

---

[5] The current location of the information contained in Document 236-11 is http://www.powerspec.cummins.com/site/help/index.html and can be accessed by the following drop-down menus: "Feature Descriptions," to "Engine Feature Descriptions" to "ISX" to the hyperlink "Idle Speed Control" and the hyperlinks contained therein.

    A.  I cannot say for sure because I'm not 100 percent sure of the Temp-a-stop system.

(*Id.*).  On March 4, 2004, Roe East, another employee of Cummins, testified as to Cummins' idle shut down system and stated that he didn't know whether it "also shut the electricity down"  (Doc. 236-17, p.4).  When asked whether he was "aware of any additional things that temp-a-stop does that your idle shutdown product doesn't do," East stated "No.  I'm not even aware that idle shutdown is an actual product, so, no, I don't know what it does or doesn't do" (*Id.*).

    Another Cummins' employee, Jeffrey D. Jones, who, at the time, was the vice president of sales and support for the engine business, was deposed on April 6, 2004 (Doc. 236-18).  Jones also testified as to a lack of knowledge with respect to Temp-a-Stop:

    Q.   Are you aware of any differences between the Temp-a-stop technology and the Cummins idle shutdown system?

    A.   I don't under – I don't know enough about the Temp-a-stop technology to accurately answer that question.

***

(*Id.* at p. 4).  Finally, Jeffrey Oakes, then a Cummins systems engineer, testified on April 7, 2004,.that he didn't know whether Cummins' idle control system also shut down electricity to the accessories.  (Doc. 236-19, p. 5).

**B. Attorney Correspondence and Briefs**

    In a July 30, 2002 letter from John S. Elias, then TAS' counsel, to Cummins' corporate counsel, prior to initiation of the TAS I lawsuit, Attorney Elias states:

> TAS has recently become aware that a substantial number of the engines sold by Cummins since February 22, 1997, have included the TEMP-A-STOP system (U.S. Patent No. 5,222,469) without including the entire TEMP-A-START system.   However, the TEMP-A-STOP system is itself an Original ECM Product licensed to Cummins by TAS under the License Agreement necessitating the payment of royalties under Section 5(b) of the License Agreement.

(Doc. 229, p. 10-11, ¶ 26; Doc. 236-7, pp. 2-3).   In response, Cummins' attorney, Marianne Holzhall stated:

> Cummins has not included TEMP-A-STOP on its engines without the entire TEMP-A-START system.  Although an idle shutdown feature is available on Cummins engines, this feature does not incorporate any technology licensed under the Intellectual Property License Agreement and has been available on Cummins engines in substantially the same form since the late 1980s.  Therefore, Cummins has not failed to report sales or pay royalties relating to the TEMP-A-STOP system standing alone.

(Doc. 219, p. 11 ¶ 27; Doc. 236-8, p. 1)

In briefing before this Court, the parties discussed Temp-a-Stop and its relationship to Cummins' idle shutdown feature.  In an April 19, 2004 brief, TAS stated, as an undisputed material fact, that Temp-a-Stop "performs certain functions which cannot be performed by a product or feature offered by Cummins, most particularly the ability to turn off the electricity of truck accessories when the engine shuts down because it has been idling for a particular period of time" (Doc. 236-28, p. 17).  TAS went on to state that Cummins idle shutdown feature "did not shut off the power to accessories . . ." (Doc. 236-28, p. 18).  To support the second proposition, TAS relied on a version of FFD 189 that did not include the

handwritten notation "Already have" (Doc. 219, p. 18, ¶ 49).[6]  In a May 11, 2004 brief, TAS further argued that "Cummins had an obligation to develop, market and sell a separate Product containing the separately patented Temp-A-Stop Product" (Doc. 236-30, p. 27).  TAS also argued:

> Instead of promoting a Temp-a-Stop Product, Cummins marketed and sold (and continues to market and sell) a product which directly competes with Temp-A-Stop (to the exclusion of Temp-A-Stop), notwithstanding Cummins's contractual obligations to make 'all reasonable efforts' to market and sell Temp-A-Stop.  That product is idle shutdown.

(Doc. 236-30, p. 28 (emphasis in original)).  Finally, in a May 24, 2004 brief, TAS argued that the contracts required Cummins to include Temp-a-Stop in its engines "as the competing product sold by Cummins (idle shutdown) was sold on all such engines, and the inclusion of the Tem-A-Stop technology could have been accomplished at minimal cost" (Doc. 236-31, p. 4).

In response to these assertions, in a May 10, 2004 brief, Cummins stated: "The evidence is undisputed that idle shutdown, which shuts down the vehicle engine but does not disconnect power to the accessories, is a standard feature on electronic heavy duty engines, and Cummins has included that feature on its engines since well before the agreements were executed" (Doc. 236-29, p. 38).  In a May 25, 2004 brief, Cummins further states: "Cummins' idle shutdown function does not directly compete with Temp-A-Stop, because it shuts down only the engine after a predetermined period of time, and does not shut down power to the

---

[6] As indicated above, Cummins notes that the version with "Already have" was also produced during TAS I.

accessories." (Doc. 239-5, p. 21 (citation omitted))  And, in a brief before the Seventh Circuit, Cummins stated that its engines have

> contained an idle shutdown feature, which shuts down the engine (but not the power to the vehicle accessories) after the engine has idled for a certain time. This is a function of the engine, as opposed to an option for which purchasers pay an additional charge. . . . In vehicles equipped with the ICON product, the standard idle shutdown function is replaced by 'mandatory shutdown,' which shuts down the engine and shuts off power to the vehicle accessories after the engine has idled for a predetermined period of time.

(Doc. 239-6, p. 3 (citation omitted)).

While TAS I was on appeal and prior to a decision by the Seventh Circuit Court of Appeals,[7] TAS asserts that "[s]hortly after November 8, 2006, TAS learned of information, for the first time, that  . . ." Cummins' representations as to the ability of ISF Plus System to turn off accessories was "either 1) no longer true or 2) had been false when made" (Doc. 238, p. 32, ¶ 17).  Also prior to the Seventh Circuit's decision, TAS' counsel authored a letter to Cummins dated April 24, 2007. In that letter, TAS states:

> TAS has just recently learned that Cummins has embodied the Temp-a-Stop technology in the manufacture of thousands of engines per year. . . .  Proof of this fact is shown in Cummins wiring diagrams for the ISX and ISM engines which both show an OEM Connector No. 35 which functions to provide a signal that will operate a relay to shut off the truck's electrical system when the engine ECM shuts down the engines. (*See* Bulletins Nos. 3666268-04 & 3666269-03).  This feature is designed to prevent electrical items . . . (accessories) from remaining on with the engine turned off . . . .

(Doc. 238, p. 33, ¶ 18; Doc. 238-4, p. 3).  It is unclear from the parties' filings when the Bulletins referred to in the letter were produced.

---

[7] The decision was rendered on June 14, 2007.

11

DISCUSSION

## I. Standard

Summary judgment should be granted where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party has the responsibility of informing the Court as to portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

Once the movant has met its burden, to survive summary judgment the "nonmovant must show through specific evidence that a triable issue of fact remains on issues on which he bears the burden of proof at trial." *Warsco v. Preferred Tech. Group*, 258 F.3d 557, 563 (7th Cir. 2001); s*ee also Celotex Corp.*, 477 U.S. at 322-24. "The nonmovant may not rest upon mere allegations in the pleadings or upon conclusory statements in affidavits; it must go beyond the pleadings and support its contentions with proper documentary evidence." *Chemsource, Inc. v. Hub Group, Inc.*, 106 F.3d 1358, 1361 (7th Cir. 1997).

This Court must nonetheless "view the record and all inferences drawn from it in the light most favorable to the [non-moving party]." *Holland v. Jefferson Nat. Life Ins. Co.*, 883 F.2d 1307, 1312 (7th Cir. 1989). In doing so, this Court is not "required to draw every conceivable inference from the record -- only those

12

inferences that are reasonable." *Bank Leumi Le-Isreal, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991). Therefore, if the record before the court "could not lead a rational trier of fact to find for the non-moving party," then no genuine issue of material fact exists and, the moving party is entitled to judgment as a matter of law. *McClendon v. Indiana Sugars, Inc.*, 108 F.3d 789, 796 (7th Cir. 1997) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). However, in ruling on a motion for summary judgment, the court may not weigh the evidence or resolve issues of fact; disputed facts must be left for resolution at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986).

## II. Analysis

### A. *Res Judicata*

As indicated in previous Orders of this Court, there is no question that Illinois *res judicata* law applies and that the only issue to be determined is whether there is identity of cause of action between Counts I and III and TAS I.

Illinois law provides that "a final judgment on the merits rendered by a court of competent jurisdiction bars any subsequent actions between the same parties or their privies on the same cause of action." *Piagentini v. Ford Motor Co.*, 901 N.E.2d 986, 990 (Ill. App. Ct. 2009). The doctrine is equitable and "designed to prevent a multiplicity of lawsuits between the same parties where the facts and issues are the same." *Id.* As it is an equitable doctrine, it is applied "as fairness and justice require," and "will not be technically applied if to do so would create inequitable and unjust results" or where it would be "fundamentally unfair to do so." *Id.*

In order for *res judicata* to apply, three elements need be met: "(1) final judgment on the merits has been rendered by a court of competent jurisdiction; (2) identity of cause of action exists; and (3) the parties or their privies are identical in both actions." *Jackson v. Victory Memorial Hospital*, 900 N.E.2d 309, 317 (Ill. App. Ct. 2008). *Res judicata* not only precludes issues that were raised in the prior lawsuit, but also "those matters that could have been decided in that suit." *River Park, Inc. v. City of Highland Park*, 703 N.E.2d 883, 889 (Ill. 1998); *Hudson v. City of Chicago*, 889 N.E.2d 210, 213 (Ill. 2008); *Hughey v. Industrial Commission*, 394 N.E.2d 1164 (Ill. 1979); *Treadway v. Nations Credit Financial Services Corp*, 892 N.E.2d 534, 539 (Ill. App. Ct. 2008); *Altair Corp. v. Grand Premier Trust and Inv., Inc.*, 742 N.E.2d 351, 355 (Ill. App. Ct. 2000). Whether there is identity of cause of action is determined by a transactional analysis: "separate claims will be considered the same cause of action for purposes of *res judicata* if they arise from a single group of operative facts, regardless of whether they assert different theories of relief." *River Park, Inc.*, 703 N.E.2d at 893. "Whether a group of facts constitutes a transaction is 'to be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage.'" *Altair Corp.*, 742 N.E.2d at 355 (quoting *River Park, Inc.*, 703 N.E.2d at 893, quoting RESTATEMENT (SECOND) JUDGMENT § 24(2) (1982)).

TAS' current claims with respect to Cummins' ISF Plus System are barred by *res judicata* because they should have and could have been brought in TAS I. TAS'

current claims arose out of the same transaction as those in TAS I, indeed, much of the witnesses and evidence are identical, and should have been raised in that prior lawsuit. The causes of action in TAS I and this case arose from the same group of operative facts, to wit, Cummins use of TAS technology in its engines and Cummins action (or inaction) in maximizing royalties due to TAS.  The only differences are the particular facts that TAS employs to show that Cummins breached their agreements.   These nuances in facts, however, are insufficient to withstand the preclusive effect of the prior lawsuit because each claim arose out of the same transaction.   TAS' argument that Cummins' misrepresentation regarding salient facts renders *res judicata* inapplicable is unconvincing.[8] Regardless of what Cummins may have *argued* in its briefs, TAS had before it, in TAS I, sufficient *evidence* from which it reasonably could have brought the claims made in the current lawsuit.   Combination of the current claims into the claims alleged in TAS I would have created a more convenient and economical trial unit.  *See Hagee v. City of Evanston*, 729 F.2d 510, 514 (7th Cir. 1984) ("The principle that res judicata extends to all matters within the purview of the original action, whether or not they were actually raised, is tantamount to a rule requiring parties to consolidate all closely related matters into one suit.  As such, the principle serves well the interests of judicial economy, and thus it is at the core of the res judicata doctrine.").

---

[8] The Court specifically does not find that any misrepresentation by Cummins caused TAS to fail to include these claims in TAS I.  *See* RESTATEMENT (SECOND) OF JUDGMENTS § 26 cmt. J; *Livingston v. ITT Consumer Financial Corporation*, 795 F.Supp. 921 (D. Minn. 1992).

TAS' current claims are for breach of contract. TAS claims that Cummins' ISF Plus System contains TAS technology making it an "Original ECM Product" which would generate a royalty in favor of TAS. Alternatively, TAS alleges that Cummins' ISF Plus System does not contain TAS technology but performs the same function as TAS technology. Because it performs the same function, the ISF Plus System directly competes with TAS technology and therefore violates section 6(f) of the License Agreement. In particular, TAS now alleges that the ISF Plus System contains an accessory shutdown feature that either incorporates its Temp-a-Stop technology or competes directly with its Temp-a-Stop technology. Either way, TAS alleges that Cummins owes additional royalties.

TAS I involved claims that Cummins breached their contracts by failing to use reasonable efforts to develop, market and sell products containing its technology. In Counts I through VIII, TAS alleged that Cummins failed to maximize sales of either Original ECM Products or Retrofit Products utilizing the Temp-A-Start or the Temp-A-Stop Technology (Doc. 236-20 p. 15). Counts IX through XII sought specific performance: that Cummins had a contractual obligation to "develop, manufacture and incorporate" TAS technology in its ECMs and to manufacture Retrofit Products to "maximize royalties payable to TAS." In particular, TAS alleged that Cummins had a duty to develop and sell a separate Temp-a-Stop product. Neither this Court nor the Seventh Circuit Court of Appeals reached the merits of TAS' claims that the breach had occurred; rather, its claims were denied on the issue of damages. *See TAS Distributing Co., Inc. v. Cummins Engine Company, Inc.*, 491 F.3d 625 (7th Cir. 2007).

16

Both TAS I and TAS' current claims with respect to the ISF Plus System involve Temp-a-Stop and Cummins use and marketing of that technology.  In TAS I, TAS could have discovered, through reasonable diligence, that Cummins' ISF Plus System performed two functions: it shut down an engine after it had been idling for a preset period of time and an optional feature was available to shut down accessories.  TAS could have discerned this information from FFD 189 – which, while arguably containing information on proposed features -- should have at least prompted TAS to ask the question of whether Cummins' ISF Plus System also included an optional feature to shut down accessories.  Such a question also should have been prompted by Cummins' webpage indicating that an optional relay was currently (in 2002) available to shut off accessories.[9]  Moreover, TAS questioned various deponents about Temp-a-Stop and Cummins' idle shut down system.  The questions focused on comparing the two systems and invariably drew the response that the deponents were not familiar with Temp-a-Stop.  The next logical questions would have been to ask the deponents to describe what Cummins' idle management did, and, in particular, to ask the question of whether it also shut down accessories. When TAS did ask this specific question, some deponents testified that they did not

---

[9] TAS asserts that it reasonably believed that the webpage referred to ICON and not Cummins' ISF Plus System based on statements made in Cummins' briefs.  Such an argument fails to recognize that diligence during discovery (which preceded the briefs) would have garnered information concerning the ISF Plus System and whether it also shut down accessories.  Had TAS been diligent, the misrepresentations in subsequent briefs may not have been made and would not have led TAS astray.

know whether the ISF Plus System also shut down accessories.[10]   The next logical

step was to seek a deponent who was familiar with the ISF Plus System who could

answer TAS' questions.  TAS failed to do this.

---

[10] TAS states that "[t]he problem is that Cummins' witnesses, including a Rule 30(b)(6) witness, either stated that Cummins' own idle management system would not turn off the accessories or stated that they lacked the requisite knowledge" (Doc. 239, p. 51).  TAS does not point to a specific statement of material fact that supports the contention that a Cummins' witness affirmatively stated that the ISF Plus System does not shut down accessories.  Witnesses only indicated that *they didn't know* whether the ISF Plus System switched off accessories.

TAS nonetheless argues that its Rule 30(b)(6) notice compelled Cummins to provide a witness who was knowledgeable about the ISF Plus System.  A Rule 30(b)(6) notice must "describe with reasonable particularity the matters for examination" and requires  an organization to designate a person or persons to testify on its behalf (the 2004 version of Rule 30 had the same essential requirement).  TAS' Rule 30(b)(6) Notice to Cummins in TAS I sought a corporate designee who:

1.  was familiar with the contracts at issue, performance under the agreements, and payment of royalties;

2.  would testify as to the "marketing efforts," "expenditures for marketing," "engineering and development efforts," and "expenditures for engineering and developing" of "Products utilizing Subject Technology" in years 1997 to;

3.  who would testify at the engineering of the ECM with respect to the environmental standards  and the development of "the EM100 Module for ICON";

4.  who would testify as to the decisions regarding inclusion of "Subject Technology";

5.  who would testify to Cummins' profits on engines from 1997 to 2004; and

6.  who would testify as to certain documents.  (Doc. 238-5, pp. 16-20).

Each of the topics listed related to the development of the "Subject Technology" and there is no question that Cummins provided deponents (Putterill and East) who could testify as to the subjects listed in this Notice.  TAS argues, however, that the

Instead, TAS focuses on statements made by attorneys and in briefs after the close of discovery.   Such arguments are misplaced.   First, TAS points to the following statement from Cummins' attorney prior to TAS I:

> Cummins has not included TEMP-A-STOP on its engines without the entire TEMP-A-START system.  Although an idle shutdown feature is available on Cummins engines, this feature does not incorporate any technology licensed under the Intellectual Property License Agreement and has been available on Cummins engines in substantially the same form since the late 1980s.  Therefore, Cummins has not failed to report sales or pay royalties relating to the TEMP-A-STOP system standing alone.

(Doc. 219, p. 11 ¶ 27; Doc. 236-8, p. 1).   TAS argues that this statement "does not merely imply, it asserts that Cummins' idle shutdown system at the time did not have an accessory shutdown feature" (Doc. 238, p. 52).   Even if such an interpretation is reasonable, TAS did not merely disregard Cummins' idle management system in its discovery based on this statement by Cummins' attorney. TAS asked various deponents about Cummins' idle shut down feature and received

---

Notice was broad enough to encompass a designee who would also testify as to the ISF Plus System.

Rule 30(B)(6) requires the notice to "describe with reasonable particularity" the topics to be discussed.  A notice that focuses on the "Subject Technology" would not have notified Cummins that it was required to produce a witness who would also testify as to other features that a Cummins engine would have.  TAS already was aware that Cummins engines had an idle control feature and it asked deponents about this feature.  It would have been an easy task, then, for TAS to have provided notice that Cummins should produce a deponent who did know about the idle control features.

TAS may also be arguing that the deponents were not sufficiently familiar with Temp-a-Stop technology (as noted above, Putterill testified that he was not "100 percent sure" of the Temp-a-Stop system; East only testified that he was not familiar with the ISF Plus System) and that Cummins should have produced someone pursuant to the Notice who was familiar with that technology.  If TAS believed that the Rule 30(b)(6) designee could not testify as to the items in its notice, it should have timely objected during TAS I.

documents related to it. TAS merely failed to conduct *diligent* discovery. Statements made by Cummins, in its brief, also did not excuse TAS from independently conducting discovery in a diligent manner. That is, statements made *after* TAS failed to diligently conduct discovery do not excuse the failure to diligently conduct discovery. Finally, TAS argues that when it "discovered" Cummins' misstatements prior to the Seventh Circuit's ruling (by reviewing wiring diagrams), *Cummins* should have informed the Seventh Circuit of its mistake. The Court wonders why TAS itself, as the prosecutor of its case, also would not have the ability to inform the Seventh Circuit and seek a remand to amend its complaint – especially in light of TAS' argument that the accessory shut down feature was the most important fact in TAS I.

The Court is mindful that its conclusion appears harsh, especially because hindsight is always 20/20. However, in TAS I, TAS was focused on how Cummins was or was not living up to its end of the License Agreement. TAS also was specifically focused on Cummins' actions with respect to Temp-a-Stop. In light of such focus, it would have been abundantly reasonable for TAS to have explored all reasonable avenues that would lead to Cummins' liability including that avenue related to Cummins' own idle shut down system. TAS currently claims that it was injured to the tune of at least $44 million. With such high stakes, TAS should have and could have pursued its claims with respect to the ISF Plus System in TAS I through the exercise of reasonable diligence.

Finally, Cummins argues that *res judicata* further bars TAS from seeking damages on engines sold after the conclusion of TAS I. *Res judicata* "bars further

claims by parties or their privies based on the same cause of action." *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir. 1986) (quotation marks and citations omitted). The doctrine bars TAS from bringing the current suit, and any future suit related to matters that could have been raised in TAS I. TAS had one bite at the apple and failed to take it. It cannot now seek damages that it should have sought in TAS I under some sort of a continuing violation theory. Such actions would turn *res judicata* on its head and make the doctrine meaningless. TAS is simply barred from asserting any claim, now and in the future, with respect to Cummins' ISF Plus system vis-à-vis the contracts at issue.

In light of these conclusions, it is unnecessary to discuss Cummins' additional arguments regarding the merits of Count III.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment as to Count I (Doc. 221) filed by Cummins is GRANTED, the Motion for Summary Judgment as to Count III (Doc. 219) filed by Cummins is GRANTED, and the Motion to Strike (Doc. 244) filed by TAS is DENIED.

This matter is SET for a telephonic conference on May 26, 2010 at 10:30 a.m. to discuss the schedule in this case.

Entered this <u>18th</u> day of May, 2010

        s/ Joe B. McDade
        JOE BILLY MCDADE
        Senior United States District Judge